In re Cruz Elena **QUIÑONES LOPEZ**, Debtor.

Cruz Elena Quiñones Lopez, Plaintiff,

v.

**Ford Motor Credit Corporation, John Doe and Richard Doe, Defendants.**

**Bankruptcy No. 01–09225–ESL. Adversary No. 01–0079–MWV.**

United States Bankruptcy Court, D. Puerto Rico.

Jan. 16, 2004.

Juan Manuel Suarez Cobo, San Juan, PR, for Debtor.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it Plaintiff Cruz Elena Quiñones Lopez's request for damages for the willful violation of the automatic stay against Defendant Ford Motor Credit Corporation pursuant to section 362 of the Bankruptcy Code. The Court has previously granted the Plaintiff's motion for summary judgment, finding a willful violation of the stay. The sole issue remaining is damages.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

At the start of the hearing held on August 26, 2003, the parties stipulated to the following facts:

1. The bankruptcy was filed on August 17, 2001.

2. The Debtor listed a Ford Windstar on her petition.

3. The Defendant took possession of the Ford Windstar on July 18, 2001.

4. The Defendant knew of the Plaintiff's bankruptcy on the same date that it was filed.

5. The Defendant sold the vehicle on August 29, 2001, for $7,800.

6. The Defendant was requested to return the vehicle.

7. The Defendant did not return the vehicle.

8. Defendant's failure to return the vehicle was done both knowingly and intentionally.

At trial, the Court heard testimony from the Plaintiff and Iris V. Mulero Rivera, who worked for the collection agency that repossessed the vehicle. At the conclusion of the trial, the Court directed the Plaintiff's lawyer to file a statement of his legal fees, which was done on September 22, 2003.

## DISCUSSION

### Section 362(h)

In the instant case, the Plaintiff seeks both actual damages and punitive damages. The Court will first address actual damages. The Court finds, based on the Plaintiff's testimony, that her average base income at the time of the filing was $1,600 per month. She testified that, without a car, she was unable to work at all through the end of September 2001. The Court awards as actual damages the income for one and one-half months in the amount of $2,400. She further testified that she returned to work for the same employer in October 2001, but her earnings were restricted because of lack of a vehicle. She did this job from October 2001 to February 2002 for an average monthly income of $600, or a reduction of $1,000 per month from her previous income. The Court awards as actual damages the sum of $1,000 per month for four months, or $4,000. She further testified that she changed jobs in February and then earned $1,200 per month, or a loss of $400 per month from her income at the time of filing. The Court awards her $400 per month for three months, or $1,200. The Court is terminating the term of the actual damages to April 2002, finding that this matter could have been resolved within that period of time. As additional income, she testified that she had worked on "shifts" at a local hospital for which received $80 per shift, and she averaged four shifts per month. The Court awards Plaintiff $320 per month for nine months, or $2,880.

Section 362(h) also provides for the awarding of attorney fees. Counsel for the Plaintiff has requested $14,998 in legal fees and $427.08 in expenses for a total award of $15,425.08. The Court has reviewed the detailed description of the fees and expenses and finds them to be reasonable in the context of this litigation. The Court also notes that counsel's time is billed at $150 per hour as opposed to his regular rate of $185 per hour. The Court awards legal fees and expenses in the amount of $15,425.08.

The Plaintiff has also requested damages for pain and suffering in an undetermined amount. Her testimony was that because of the loss of a vehicle and the loss of her income, there was no money available for Christmas in 2001. She was also unable to transport her elderly parents as she had prior to the repossession of the vehicle, that her son started to have problems in school, and that she was unable to see her grandchild as frequently as she had previous to the repossession.

The Court is not convinced that loss of her vehicle was the sole cause of these problems. It is evident that the Plaintiff was otherwise having financial problems and familial problems with the father of her son. The Court will not award any damages for pain and suffering.

The Court will now address punitive damages. Awarding of punitive damages is meant to deter further violations of the stay. In the case of *Varela v. Ocasio*, the Court said:

> With respect to the first factor, the First Circuit has stated that "[t]he automatic stay is among the most basic of debtor protections under bankruptcy," and that "[i]n order to secure ... [its]

... important protections, courts must display a certain rigor in reacting to violations...." *In re Soares,* 107 F.3d 969, 975 (1st Cir.1997). For individual debtors, § 362(h) provides the vehicle for reacting to violations, as "[t]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; ... [and] ... the prospect of such change is relevant to the amount of punitive damages to be awarded." *In re Shade,* 261 B.R. 213, 216 (Bankr.C.D.Ill.2001) (citing *In re Riddick,* 231 B.R. 265, 269 (Bankr. N.D.Ohio 1999), and *In re Novak,* 223 B.R. 363 (Bankr.M.D.Fla.1997) (bankruptcy court gauges punitive award based on gravity of creditor's offense, and sets award at level sufficient to ensure that it will punish and deter)). The court in *Shade* listed a number of factors to be considered in awarding punitive damages, factors that are not inconsistent with those set forth in *BMW of N. Amer., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), including: "the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor." *Id.* (citations omitted). *Varela v. Ocasio (In re Ocasio),* 272 B.R. 815, 825–26 (1st Cir. BAP 2002). In the instant case, it is stipulated that the Defendant knew of the bankruptcy and the automatic stay and, with that knowledge, sold the vehicle in question. There was no request for relief from the stay and no request for adequate protection.

In defense of its actions, the Defendant argues that the vehicle was voluntarily surrendered. The Plaintiff disputes this on the facts of repossession, but even if it was voluntarily surrendered, once the bankruptcy was filed and demand was made for return of the vehicle, the Defendant had the obligation to do so or risk the finding by this Court that the automatic stay had been violated. The Court has already found that there was a willful violation of the stay. The Defendant is not an unsophisticated creditor but a company in the business of financing and repossessing vehicles. Punitive damages are awarded in the sum of $7,800. The Court notes that this award is approximately one-third of the award for actual damages and attorney fees and is surely within a reasonable ratio of actual damages to punitive damages.

To recap, this Court finds that the Defendant must pay to the Plaintiff the sum of $10,480 in actual damages, the sum of $15,425.08 for legal fees, and punitive damages in the amount of $7,800.

### CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.